# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32687**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Caleb A. TATE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 February 2022

————————————

*Military Judge:* Colin P. Eichenberger.

*Sentence:* Sentence adjudged 30 December 2020 by SpCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 12 January 2021: Bad-conduct discharge, confinement for 45 days, forfeiture of $1,155.00 pay per month for 2 months, and reduction to E-1.

*For Appellant:* Lieutenant Colonel Lance J. Wood, USAF.

*For Appellee:* Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, KEY, and ANNEXSTAD, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge LEWIS and Senior Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement (PA), of one

specification of attempted possession of 3,4-methylenedioxymethampheta-mine, one specification of dereliction of duty on divers occasions, one specification of wrongful use of a controlled substance (Adderall) on divers occasions, and three specifications of wrongful use of a controlled substance (lysergic acid diethylamide, 3,4-methylenedioxymethamphetamine, and psilocybin) in violation of Articles 80, 92, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 892, and 912a.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, 45 days of confinement, forfeiture of $1,155.00 pay per month for two months, and reduction to the grade of E-1.[3]

Appellant raises a single issue before this court: whether the military judge abused his discretion when he denied Appellant's motion to dismiss based on outrageous government conduct which occurred during the seizure and search of Appellant's phone.

Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

In 2019, the Air Force Office of Special Investigations (AFOSI) at Fairchild Air Force Base (AFB), Washington, began investigating a group of Airmen for illegal drug activity. The group, which included Appellant and three other Air Force members, referred to themselves as the "Line Men," because they all worked on the flight line and were members of the same maintenance squadron.

On 2 October 2019, AFOSI agents attempted to interview Appellant about his involvement in the illegal drug activity. Following a rights advisement, Appellant unequivocally invoked his right to counsel. AFOSI agents subsequently informed Appellant of their authorization to seize and search his cell phone. The interviewing agents then offered Appellant the "opportunity" to collect any phone numbers he needed from his phone and informed him that he would not have access to his cell phone for an extended period of time once it was seized. After Appellant wrote down some phone numbers, AFOSI agents seized Appellant's phone and continued to touch and swipe the screen in order to delay the

---

[1] All of the offenses were committed in 2019; therefore, all references to the UCMJ are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[2] In accordance with the plea agreement (PA), Appellant conditionally pleaded guilty to all charges and specifications, preserving for appellate review the issue of whether the case should be dismissed for outrageous government conduct.

[3] The adjudged sentence complied with the sentence limitations as detailed in the PA.

auto-locking mechanism and ensure the phone remained unlocked. AFOSI agents then began to search the phone and make a record of incriminating evidence found on the phone.

Prior to trial, two motions were litigated. In the first motion, Appellant moved to suppress the results of the search of his phone.[4] In the second motion, Appellant moved to dismiss all charges and specifications for Fifth Amendment[5] due process violations based on outrageous government conduct during the seizure and search of his phone. During the motions hearing and in support of both motions, Appellant called five witnesses, all of whom were special agents. The five witnesses included (1) two agents assigned at the detachment at Fairchild AFB who interviewed Appellant, Special Agents (SA) JC and CW; (2) the Director of Criminal Investigations for the Third Field Region, SA LR; and (3) two additional agents who interviewed other suspects and potential witnesses.

Both SA JC and SA CW testified that they believed they could offer Appellant the opportunity to unlock his phone and gather contact information as a technique to gain access to Appellant's phone. Specifically, SA JC testified that this technique was discussed with both the local legal office and AFOSI headquarters as a tool agents could use to gain access to the phone. He further stated that he believed this technique was not proscribed by law, but instead was a creative and new technique that could be legally implemented. SA CW testified that although he was not part of the discussions, he was aware that the technique was discussed among the local AFOSI detachment, the regional AFOSI office, and the local legal office. SA LR testified that "it was a very high level conversation of what options might be available to conduct a search and seizure" of a cell phone based on a search authorization. SA LR also testified that he advised the Fairchild AFOSI detachment about this technique and recommended they discuss it with the local legal office to ensure it complied with the current state of the law.

On 28 September 2020, the military judge ruled in favor of Appellant's first motion and suppressed the contents of the search of Appellant's phone and all derivative evidence. The same day, the military judge denied Appellant's motion to dismiss all charges and specifications, as is discussed further in this opinion. Two days later, on 30 December 2020, Appellant entered a conditional

---

[4] Appellant did not communicate his passcode to the agents, he entered it in the phone himself and then the agents seized the phone before it could lock. The fact that Appellant unlocked his phone upon the suggestion of investigators after invoking his right to counsel formed the basis of his motion to suppress.

[5] U.S. CONST. amend. V.

guilty plea to all charges and specifications and pursuant to the PA, specifically preserved the motion to dismiss for appellate review.

## II. DISCUSSION

Appellant contends the military judge abused his discretion when he denied his motion to dismiss the charges and specifications based on outrageous government conduct. Specifically, Appellant argues that AFOSI agents intentionally violated his Fifth Amendment rights by using preplanned techniques to gain access to his locked phone. He contends that the Government's conduct was outrageous because he was "both coerced and pressured to waive his constitutional rights to unlock his phone" when he was asked by the AFOSI agents if he wanted to retrieve contact information from his phone because he would likely not have access to the phone for "six to nine months." He further argues that the Government's conduct violated "fundamental fairness" and was "shocking to the universal sense of justice." As a remedy, Appellant argues that this court should dismiss all charges and specifications against Appellant. We disagree.

### A. Additional Background

In his ruling on the motion to dismiss all charges and specifications, the military judge found that AFOSI agents scheduled interviews with all the "Line Men"—including Appellant—on 2 October 2019, and that prior to those interviews AFOSI agents had obtained authorization to search and seize each suspect's cellular phone. The military judge concluded:

> The agents were generally aware of the holdings in *United States v. Mitchell,* 76 M.J. 413 (C.A.A.F. 2017) and *United States v. Robinson,* 77 M.J. 303 (C.A.A.F. 2018), which together held that if a phone is seized pursuant to a search authorization after the suspect has requested counsel, the [G]overnment may not request or require that suspect provide their phone's passcode.

The military judge further found that in an effort to get around the potential legal barriers imposed by the holdings in *Mitchell* and *Robinson*, the AFOSI agents had developed a plan through a series of discussions among the Fairchild AFB AFOSI detachment, the servicing AFOSI regional office, and the local office of the staff judge advocate. He explained in his ruling that the plan generally called for AFOSI agents to attempt to interview suspects individually and to inform them that they had authorization to seize and search the suspect's phone if the suspect invoked his right to counsel. Next, the agents would tell the suspect that AFOSI might have their phone for an extended period of time and would offer the suspect an opportunity to retrieve any needed phone numbers from the phone. The agents would require the suspect to keep the phone on the table, visible to the agents, and would retrieve the phone prior

to the suspect having the opportunity to lock it again. The military judge found that this tactic was used on Appellant and that none of the AFOSI agents thought the technique was illegal.

The military judge concluded the evidence showed "that AFOSI attempted to develop a novel investigative technique, which involved some level of trickery or deception, in order to gain access to" Appellant's phone. He also found that the "technique was only carried out after the agents received clearance from both their regional leadership and the servicing legal office." The military judge explained that although he found the investigative technique—as employed in this case—violated Appellant's Fifth Amendment rights, the agents "still exercised a reasonable amount of diligence developing the plan, did not intentionally commit any misconduct, and ultimately arrived at the plan through a mistaken interpretation of the law." He also found that "the [G]overnment's conduct was not outrageous, fundamentally unfair, nor shocking to the universal sense of justice such that it violated [Appellant's] due process rights."

## B. Law

We review a military judge's ruling on a motion to dismiss for an abuse of discretion. *United States v. Douglas*, No. ACM 38935, 2017 CCA LEXIS 407, at *19 (A.F. Ct. Crim. App. 15 Jun. 2017) (unpub. op.) (citing *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)). "An abuse of discretion occurs when a court's findings of fact are clearly erroneous or the decision is influenced by an erroneous view of the law." *Id.* (citing *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (internal quotations and citations omitted).

Issues of whether an appellant's due process rights were violated are questions of law that this court reviews de novo. *United States v. Berkhimer*, 72 M.J. 676, 680 (A.F. Ct. Crim. App. 2013) (citing *United States v. Lewis,* 69 M.J. 378, 383 (C.A.A.F. 2011)). In doing so, we will give "substantial deference to the military judge's findings of fact and will not overturn them unless they are clearly erroneous." *Id.* (citing *United States v. King,* 61 M.J. 225, 227 (C.A.A.F. 2005)).

Outrageous government conduct occurs when the behavior of "law enforcement agents is so outrageous that due process principles would absolutely bar the [G]overnment from invoking judicial process to obtain a conviction . . . violating fundamental fairness, shocking the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 679–80 (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)). Such a situation has

been defined as a "unique, peculiar situation where the conduct of the government agents reaches the point of shocking the judicial conscience." *United States v. Vanzandt*, 14 M.J. 332, 342 (C.M.A. 1982).

"To meet the threshold standard of being fundamentally unfair or shocking, the accused must generally show the [G]overnment acted with coercion, violence or brutality to the person." *Berkhimer*, 72 M.J. at 680 (citing *United States v. Patterson,* 25 M.J. 650, 651 (A.F.C.M.R. 1987)). "We use the totality of the circumstances to determine whether the conduct of government agents reaches that level of outrageousness which would warrant a dismissal of charges." *United States v. Lawson*, No. ACM 32303 (f rev), 1998 CCA LEXIS 283, at *6 (A.F. Ct. Crim. App. 10 Jun. 1998) (unpub. op.) (citing *United States v. Bell*, 38 M.J. 358, 373 (C.M.A. 1993)) (citations omitted).

Our superior court has "long held that dismissal is a drastic remedy and courts must look to see whether alternative remedies are available." *Gore*, 60 M.J. at 187 (citations omitted). "When an error can be rendered harmless, dismissal is not an appropriate remedy." *Id.* (citations omitted). As it explained further, "[D]ismissal of charges is appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings." *Id.* (citations omitted).

## C. Analysis

We have carefully reviewed the evidence of record and the military judge's extensive and deliberate findings of fact and conclusions of law. We begin our analysis by noting that Appellant does not argue on appeal that any of the military judge's findings of fact were clearly erroneous. We also find that the military judge's findings were adequately supported by the record and the testimony of the five witnesses called by Appellant in the motions hearing, and we now adopt them as our own. Furthermore, we find that the military judge correctly understood the law and that his application of the law to the facts of this case was not "outside the range of reasonable choices." *United States v. Criswell,* 78 M.J. 136, 144 (C.A.A.F. 2018) (citations omitted).

On this latter point, we agree with the military judge that these allegations, under the totality of the circumstances, fall short of the level of outrageousness contemplated by our superior court, and do not rise to the point of shocking the judicial conscience. *See Vanzandt*, 14 M.J. at 342. As the military judge found, and the evidence supports, AFOSI acted with reasonable diligence to carry out a novel investigative technique that was only later determined by the military judge to violate Appellant's Fifth Amendment rights.[6] We are not persuaded

---

[6] We do not need to discuss the military judge's ruling on the motion to suppress in order to determine whether the Government's conduct was outrageous.

by Appellant's argument that the conduct by AFOSI was outrageous because it was intended to circumvent his constitutional rights. To the contrary, the evidence leads us to conclude that the AFOSI agents subjectively believed they were acting within their legal bounds. In fact, the testimony explained precisely how AFOSI sought to act with due diligence by having multiple discussions with both their leadership and the servicing legal office to try and ensure this technique would fall within the parameters of the law. While their interpretation was later adjudged to have been wrong, their conduct does not meet the threshold standard of being fundamentally unfair or shocking under *Berkhimer*, especially in light of the fact they followed the advice of not just their leadership, but that of legal counsel as well. We see nothing in the record to indicate that the Government employed coercion, violence, or brutality during the investigation of Appellant.

Finally, even if we assume that the Government acted in an outrageous manner, Appellant has not demonstrated any actual prejudice. As we noted above, the military judge identified a violation of Appellant's Fifth Amendment rights and granted Appellant's motion to suppress—suppressing the search of Appellant's phone and all derivative evidence obtained from that search. The record also establishes that nothing the Government gained from the search was used to prosecute Appellant. Therefore, we conclude that the military judge's ruling adequately cured any potential prejudice, rendered any error harmless, and correctly stated that dismissal was not the appropriate remedy. *See Gore*, 60 M.J. at 187.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court